# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### CIVIL ACTION NO. 3:14-CV-00510-GCM

| | |
|---|---|
| DAYNE K. TAYLOR, | ) |
| **Plaintiffs,** | ) |
| v. | ) **ORDER** |
| CAROLYN W. COLVIN, | ) |
| **Defendants.** | ) |

**THIS MATTER** is before the Court on Plaintiff's Motion for Summary Judgment (Doc. No. 10) and Memorandum in Support (Doc. No. 11), both filed on January 1, 2015; and Defendant Commissioner's Motion for Summary Judgment (Doc. No. 12) and Memorandum in Support (Doc. No. 13), both filed March 19, 2015. On April 15, 2015, Plaintiff sought leave to file a supplemental brief addressing the recent Fourth Circuit decision in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). (Doc. No. 14) Plaintiff filed a supplemental Memorandum on April 29, 2015 (Doc. No. 16), and Defendant filed a Response in Opposition on May 12, 2015. (Doc. No. 17)

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth, Plaintiff's Motion for Summary Judgment is **DENIED**, Defendant's Motion for Summary Judgment is **GRANTED**, and the Commissioner's Decision is **AFFIRMED**.

## I. BACKGROUND

Plaintiff filed an application for supplemental security income on April 5, 2011, although he subsequently amended his alleged onset date to March 23, 2011. (Tr. 15) His claim was initially denied on June 21, 2011, and upon reconsideration on February 13, 2012. (Tr. 15)

1

Plaintiff filed a written request for a hearing on March 14, 2012. (Tr. 15) A hearing was held before Administrative Law Judge Jane A. Crawford on March 27, 2013. (Tr. 15) Plaintiff, represented by counsel, appeared and testified, as did a vocational expert. (Tr. 15) On May 19, 2013, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Social Security Act and denying his request for benefits. (Tr. 15-25)

Plaintiff's request that the Appeals Council review the ALJ's decision was denied, and on July 18, 2014, the ALJ's decision became the final decision of the Commissioner. (Tr. 4-6) Pursuant to 42 U.S.C. § 405(g), Plaintiff has a right to review of the Commissioner's final decision, and he timely filed the present action on September 16, 2014. (Doc. No. 1)

## II. STANDARD OF REVIEW

Judicial review of a final decision of the Commissioner in social security cases is authorized pursuant to 42 U.S.C. § 405(g) and is limited to consideration of (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"; "[i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

District courts do not review a final decision of the Secretary *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). A reviewing court must uphold the decision of the Commissioner, even in instances where the reviewing court would have come to a different conclusion, so long as the Commissioner's decision is supported by substantial evidence. *Id*. In reviewing for substantial evidence, a court should not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig*, 76

F.3d at 589. The ALJ, and not the Court, has the ultimate responsibility for weighing the evidence and resolving any conflicts. *Id*. The issue before this Court, then, is not whether Plaintiff is disabled, but whether the ALJ's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Id.*

### III. ANALYSIS

The Social Security Administration ("SSA") uses a five step sequential evaluation process, pursuant to 20 C.F.R. § 416.920, for determining whether a claimant is entitled to supplemental security income. If a claimant is found to be conclusively disabled, or not disabled, at a particular step, the inquiry ends and the adjudicator does not proceed further in the process. Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a medically determinable impairment or a combination of impairments that is severe and meets the twelve month durational requirement set forth in 20 C.F.R. § 416.909; (3) whether the claimant's impairment or combination of impairments meets or medically equals one of The Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant has the residual functional capacity ("RFC") to perform the requirements of his past relevant work; and, if unable to perform the requirements of past relevant work, (5) whether the claimant is able to adjust to other work, considering his RFC and vocational factors (age, education, and work experience). If the claimant is able to adjust to other work, considering his RFC and vocational factors, he will be found not disabled. 20 C.F.R. § 416.920(g); *see* 20 C.F.R. § 404.1520(a)(4)(i-v). The claimant bears the burden of production and proof during the first four steps of the inquiry. *Pass*, 65 F.3d at 1203. If he is able to carry this burden through the fourth step, the burden shifts to the Commissioner at the fifth step to show that other work is available in the national economy which the claimant could perform. *Id*.

3

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his amended alleged onset date of March 23, 2011. (Tr. 17) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: degenerative joint disease, dysthymic disorder with depressed mood, and dementia. (Tr. 17-18) The ALJ noted that Plaintiff also had a history of pulmonary sarcoidosis and sinus bradycardia, that he had recently had an AV permanent pacemaker installed, and that he was in full, sustained remission from cocaine abuse. (Tr. 18) The ALJ found that these impairments were medically determinable but not severe. (Tr. 18) The ALJ also noted that Plaintiff had sought medical attention for knee pain and "stress related headaches" and found that these impairments were neither medically determinable nor severe. (Tr. 19) At step three, the ALJ considered a series of the Listings and found that Plaintiff had not established an impairment that meets or is medically equally to any of them. (Tr. 19-20)

The ALJ found at step four that Plaintiff had the residual functional capacity to perform medium work, as defined in 20 C.F.R. § 416.697(c), with some exceptions. (Tr. 20) Specifically, Plaintiff can only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs; he cannot work at unprotected heights or around dangerous machinery; he can perform only simple, repetitive tasks in an environment that does not involve assembly line pace or adherence to strict production quotas. (Tr. 20) The ALJ also found that Plaintiff could tolerate frequent contact with others. (Tr. 20) Based on Plaintiff's RFC, the ALJ determined that Plaintiff could perform his relevant past work as a custodian—a medium exertion, unskilled position. (Tr. 23) The ALJ also found, at step five, that Plaintiff was capable of performing other jobs existing in the national economy in significant numbers. (Tr. 23-24) After considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that

Plaintiff had the capacity to perform the requirements of representative occupations, such as a deliverer, automobile detailer, or order picker. (Tr. 24)

On appeal to this Court, Plaintiff presents the following assignments of error: (1) new evidence presented to the Appeals Council filled evidentiary gaps and warranted remand; (2) the ALJ failed to adequately explain its finding that Plaintiff could tolerate frequent contact with others when it credited the opinion of Dr. Herrera, who made a finding that Plaintiff could tolerate only infrequent contact with others; and (3) the ALJ failed to give a complete function-by-function analysis of Plaintiff's nonexertional limitations arising from the severe impairments of dysthymic disorder and dementia. Additionally, in his Supplemental Memorandum, Plaintiff argues that the ALJ did not give adequate reasons for rejecting the opinion of Dr. Britt, a consultative examiner.

**A. New evidence**

Claimants who are denied benefits by an ALJ may submit new evidence when they request review by the Appeals Council. 40 C.F.R. § 404.968(a); *id.* § 404.970(b). The Appeals Council will consider evidence if it is new and material, and if it relates to the period on or before the date of the ALJ's hearing. *Id.* § 404.970(b). "Evidence is new 'if it is not duplicative or cumulative' and is material if there is a 'reasonable possibility that the new evidence would have changed the outcome.'" *Meyer v. Astrue*, 662 F.3d 700, 705 (4th Cir. 2011) (quoting *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). The Appeals Council is permitted to "simply deny the request for review," without explaining its reasons for doing so, if the ALJ's action, findings, or conclusions are "not contrary to the weight of the evidence." *Id.* When the Appeals Council decides to consider the new evidence, this Court includes that evidence when reviewing the ALJ's determination. *Perry v. Colvin*, No.

3:14CV539, 2015 WL 5638215, at *3 (W.D.N.C. Aug. 31, 2015) *report and recommendation adopted*, No. 3:14-CV-00539-MOC, 2015 WL 5655718 (W.D.N.C. Sept. 24, 2015). Under the Fourth Circuit's opinion in *Meyer v. Astrue*, when the new evidence is the only opinion of a treating physician in the record, remand may be "particularly helpful." *See Rowe v. Colvin*, No. 3:13-CV-00573-MOC-DL, 2014 WL 6879666, at *1 (W.D.N.C. Dec. 4, 2014) (quoting *Meyer*, 662 F.3d at 706).

Here, the Appeals Council considered new evidence that Plaintiff submitted and thus this Court will determine whether substantial evidence supported the ALJ's finding in light of that new evidence. The new evidence at issue is a questionnaire completed by Dr. John Symanski, Plaintiff's treating cardiologist, in which he opined on Plaintiff's ability to perform certain work functions. (Tr. 325-29) The questionnaire is dated April 8, 2013—after Plaintiff's hearing date, but before the ALJ's decision date. (Tr. 329)

In the questionnaire, Dr. Symanski indicated that Plaintiff would rarely experience pain or other symptoms sufficient to interfere with attention and concentration, and that he is capable of performing high stress work. (Tr. 326) Dr. Symanski also described Plaintiff's physical limitations, noting that he was able to sit for more than 2 hours, but stand for only one hour, before needing a break; that he could sit and stand for about four hours per day, and that he would need a five minute break once per hour to walk. (Tr. 326-27) He also opined that Plaintiff should elevate his legs if his position required him to remain sedentary. (Tr. 327) At the same time, however, Dr. Symanski did not believe that Plaintiff would require unscheduled breaks or the ability to shift positions (from sitting to standing or vice versa) at will. (Tr. 327) He opined that Plaintiff could occasionally lift up to 20 pounds; look down, turn his head left or right, and hold his head in a static position; and twist, stoop, crouch, squat, or climb ladders to

6

stairs. (Tr. 327-28) He ascribed Plaintiff significant limitations with reaching, handling, or fingering. (Tr. 328) Dr. Symanski did not link any of his recommendations regarding Plaintiff's physical capacity to specific medical findings.

The Court finds that although Dr. Symanski's opinions about Plaintiff's ability to perform specific work functions are new and material, the ALJ's determination is still supported by substantial evidence. For starters, a treating physician's opinion is less significant when it is not supported by specific diagnostic techniques or by the other substantial evidence in the claimant's record. *See* 20 C.F. R. §416.927(c). Here, Dr. Symanski did not link his questionnaire findings to specific medical evidence in Plaintiff's record. Indeed, his own treatment notes, which were before the ALJ, do not suggest that Plaintiff has significant physical limitations. (Tr. 230; 239-41; 250-52). Dr. Symanski's treatment notes describe Plaintiff as "in no acute distress." (Tr. 240) They describe Plaintiff as having a regular heart rate and rhythm, clear lungs, and a "grossly intact" musculoskeletal system. (Tr. 241) They further describe plaintiff as having "normal strength" and "no [muscular] atrophy." (Tr. 252) At the time of treatment, Dr. Symanski's notes do not reflect that he made any recommendations to Plaintiff about limiting physical activity and he recommended follow up in one year's time. (Tr. 252) In sum, Dr. Symanski's treatment notes support the ALJ's finding that Plaintiff has the physical ability to perform most light work, with some exceptions, rather than the more severe limitations suggested by his questionnaire.

Additionally, various other evidence in the record supports the ALJ's determination. This is significant because the more a medical opinion is consistent with the record as a whole, the more weight it is given in the analysis. *See* 20 C.F. R. §416.927(c)(4). For example, as the ALJ explained, Plaintiff's "lungs have been consistently clear on physical examination" and "his

7

chest x-rays [have been] normal without evidence of pulmonary disease or cardiac involvement." (Tr. 18; 251-54; 264) Similarly, Plaintiff's pacemaker was functioning normally and had resulted in less frequent episodes of syncope. (Tr. 18) As for Plaintiff's physical strength, the ALJ cited to an examination by Dr. Charles Gordon in February 2013. (Tr. 18; 304-13) Dr. Gordon noted that Plaintiff had "no obvious joint deformities" and "move[d] all extremities well." (Tr. 305) Dr. Gordon found, consistent with other treatment notes in the record, that Plaintiff's heartrate was regular and normal, that he had "no increased work of breathing," and generally that he was in "no acute distress." (Tr. 305; *see* Tr. 223, 240)

Moreover, the only other physical limitation placed on Plaintiff by any physician was a 2011 treatment note that instructed Plaintiff not to lift more than 10 pounds "until released." (Tr. 183) The ALJ appropriately afforded this instruction limited weight in context. The clear import of the "until released" language is that the examining physician did not intend to place permanent restrictions of Plaintiff's movements. Indeed, as the ALJ pointed out, the record does not suggest that Plaintiff followed up with a treating physician, despite the fact that he was instructed to do so within two days "even if well." (Tr. 183) For this reason, even if no physician ever expressly "released" Plaintiff from the restrictions, the ALJ did not err in assigning the treatment note little weight.

Lastly, according to Plaintiff's own testimony, the Plaintiff engages in various activities during a typical day which are inconsistent with a finding that he has severe physical limitations. For example, during an average day, Plaintiff walks thirty five to forty minutes to a bus terminal, goes to the Bank of America building to drink coffee and use wireless internet, or sits in the library or Starbucks using a laptop computer to work on a book he is writing. (Tr. 21-22) After spending several hours at one of these locations, Plaintiff takes the bus again before walking

8

back to the shelter where he lives. (Tr. 22) In the alternative, he spends time at friends' houses or at his daughter's home. (Tr. 22) With his grandchildren, he sometimes grocery shops or takes them to community events including, on one occasion, an Easter Egg hunt. (Tr. 22) In short, Plaintiff's descriptions of his daily activities suggest that, while he may have some mobility limitations, the ALJ's determination that Plaintiff can perform most medium work, with enumerated exceptions, is supported by substantial evidence.

### B. Opinions of Dr. Herrera and Dr. Britt

Plaintiff next argues that remand is necessary because the ALJ gave "substantial weight" to the opinion of the state psychological consultant, Dr. Nancy Herrera (Tr. 23), but did not explain her reasons for discounting Dr. Herrera's opinion that Plaintiff could only work in a setting with minimal interpersonal contact. (Tr. 39) Plaintiff points out that when no treating physician's opinion is given controlling weight, the ALJ must explain the weight given to state psychological consultants. 20 C.R.F. § 416.927(c). Additionally, to the extent the ALJ arrives at an RFC that conflicts with a medical opinion, she must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996). Defendant concedes that the ALJ did not explain its reasons for finding that Plaintiff could tolerate frequent contact with others, but argues that any error was harmless. *See Dover v. Astrue*, No. 1:11CV120, 2012 WL 1416410, at *5 (W.D.N.C. Mar. 19, 2012), *report and recommendation adopted*, No. 1:11CV120, 2012 WL 1416592 (W.D.N.C. Apr. 24, 2012); *see also Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

9

The ALJ concluded that Plaintiff could perform unskilled work that required moderate exertion, except that he could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs; he could not work at unprotected heights or around dangerous machinery; and he could perform only simple, repetitive tasks in an environment that does not involve assembly line pace or adherence to strict production quotas. (Tr. 20) As a result, she determined that he could perform his past relevant work as a custodian, or "representative occupations" such as a deliverer, automobile detailer, or order picker. (Tr. 24) Each of these positions constitutes an unskilled occupation. (Tr. 24) Unskilled work "relate[s] to working with things (rather than data or people)." 20 C.F.R. Pt. 404, Subpt. P, App'x 2, § 201.00(h)(4)(i). Moreover, while the representative occupation of deliverer describes some duties that may require frequent contact with the public or with co-workers, the other occupations that the ALJ found Plaintiff able to perform do not. *See* DOT # 915.687-034 (automobile detailer); DOT # 922.687-058 (order picker); *see also* DOT # 382.664-010 (janitor). Because the ALJ identified several jobs in the national economy required little to no interpersonal contact that Plaintiff could perform, her ultimate determination that there was sufficient work in the national economy that Plaintiff could perform is entirely consistent with Dr. Herrera's findings as to his abilities. Thus, the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and her failure to explain the reason for finding Plaintiff could tolerate frequent interpersonal contact was harmless.

Plaintiff also argues that the ALJ erred in giving substantial weight to Dr. Morris Britt's observations about Plaintiff, but "disagree[ing] with his opinion as recited in Exhibit 3F, page 7 to the extent it is inconsistent with the . . . assigned residual functional capacity." (Tr. 23) Specifically, it appears that the ALJ did not credit Dr. Britt's opinion that Plaintiff's "interaction

10

with peers and coworkers is rather constricted and poor." (Tr. 208) The ALJ also seems to have disagreed with Dr. Britt's statements that Plaintiff's "ability to perform simple, routine, repetitive tasks is fair to poor" and his "ability to maintain concentration, persistence, and pace is very compromised and poor." (Tr. 208) The Court finds that the ALJ's decision to assign these opinions less weight was adequately explained and that the ultimate determination is supported by substantial evidence. The ALJ explained that her decision was based on the consultative nature of Dr. Britt's relationship to Plaintiff, and as the regulations make clear, the ALJ was permitted to consider the "frequency of examination" when weighing Dr. Britt's opinion. 20 C.F.R. § 916.27(c)(2)(i).

Moreover, Dr. Britt's conclusion that Plaintiff's "interaction with peers and coworkers is rather constricted and poor" was not supported by his observations of Plaintiff during the consultation, which the ALJ credited. The ALJ cited to portions of Dr. Britt's report explaining that that Plaintiff was "oriented in all spheres," "his speech was clear, coherent, chronological, goal directed and relevant," and that he behaved appropriately—from exhibiting normal eye contact to dressing in a normal way to answering questions in a cooperative manner. (Tr. 22, 205) Indeed, in other portions of his report, Dr. Britt opined that Plaintiff "displayed adequate social skills" and appeared to be "a fairly mentally capable individual." (Tr. 205, 207) He described Plaintiff as "a very pleasant man," who self-identified as a "usually happy" person with "excellent" motivation, which he developed during periods of working up to 60 or 70 hours per week. (Tr. 203, 205). For these reasons, the ALJ did not err in affording Dr. Britt's assessment of Plaintiff's ability to interact with coworkers was entitled to limited weight.

As for Dr. Britt's assessment of Plaintiff's ability to perform simple, routine, repetitive tasks and maintain concentration, persistence, and pace, the ALJ did not err in crediting the

11

opinion of Dr. Herrera as more "consistent with the objective medical evidence as a whole." (Tr. 23) The regulations specifically provide that the "the more consistent an opinion is with the record as a whole, the more weight" it will be given in the analysis. 20 C.F.R. § 916.927(c)(4). Here, Dr. Herrera opined that Plaintiff "retains the ability to perform simple, repetitive, routine tasks in a low stress, low production setting with minimal interpersonal contact." (Tr. 36) She opined that Dr. Britt's contrary assessment was "not supported by other substantial evidence" and was "based on a one-time, snapshot [consultative exam]." (Tr. 36) Dr. Herrera determined that Plaintiff was not significantly limited in his ability to understand and remember very short and similar instructions and carry out those instructions. (Tr. 37) For this reason, although Plaintiff "may have some deficits in sustained concentration . . . [he] is capable of sustaining sufficient attention to complete simple, routine tasks" at a nonproduction pace. (Tr. 37) The ALJ did not err in concluding that these assessments were more consistent with both Doctors' observations of Plaintiff.

Additionally, Plaintiff's daily activities also provide evidence that his ability to perform routine tasks and maintain concentration, persistence, and pace are not substantially impaired. Plaintiff described long days of walking, riding the bus, and researching for a book he is writing, which the ALJ was permitted to take into account. (Tr. 363-66) For these reasons, the Court finds that the ALJ's determination that Plaintiff could perform routine, repetitive tasks in an environment without assembly line pace or quotas was supported by substantial evidence.

**C. Plaintiff's nonexertional limitations**

Plaintiff's final argument is that the ALJ failed to conduct an adequate function-by-function analysis of his nonexertional limitations. Plaintiff points out that, pursuant to SSR 96-8p, an ALJ is required to express a claimant's nonexertional capacity in terms of work-related

functions, and he argues that the ALJ failed to adequately analyze his nonexertional limitations arising from dysthymic disorder with depressed mood and dementia. *See* SSR 96-8p, 1996 WL 374184, at *6 (S.S.A. July 2, 1996). In his Supplemental Memorandum, the Plaintiff further suggests that remand is warranted because the ALJ failed to adequately explain its reasons for finding that Plaintiff could perform simple, routine, repetitive tasks "for a full workday." *See Mascio*, 780 F.3d at 637.

A claimant's nonexertional capacity refers to "all work related limitations and restrictions that do not depend on an individual's physical strength," such as mental limitations, communication abilities, and other non-physical restrictions. SSR 96-8p, 1996 WL 374184, at *6. A claimant's nonexertional capacity must be expressed in terms of work-related functions. *Id*. "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." *Id.* "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." *Id.*

In *Mascio v. Colvin*, the Fourth Circuit provided further guidance on this issue. In *Mascio*, the Fourth Circuit held that an ALJ does not account for a claimant's nonexertional limitations in concentration, persistence, and pace by asking hypothetical questions about his ability to perform to "simple, routine tasks or unskilled work. 780 F.3d 632, 638 (4th Cir. 2015). The Court distinguished the "ability to perform simple tasks from the ability to say on task," and explained that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id*. In *Mascio*, Fourth Circuit remanded the case to the ALJ

13

because it found that moderate limitations in concentration, persistence, and pace are not adequately accounted for in the RFC by only limiting the claimant to "simple, routine tasks or unskilled work." *Id.*

Here, the ALJ specifically analyzed the evidence of Plaintiff's nonexertional limitations. (Tr. 22-23) She determined that Plaintiff was relatively active and very self-sufficient on a daily basis, and that his specific activities suggested an ability maintain concentration and persistence. (Tr. 22) For example, the ALJ explained, Plaintiff regularly navigates the public transportation system and conducts research for a book that he is writing. (Tr. 22) The ALJ concluded that these activities suggest the mental capacity to perform tasks "which require memory and concentration." (Tr. 22) The ALJ also credited the observations of Dr. Britt, which found Plaintiff to be "very autonomous" and "oriented in all spheres." (Tr. 22) Additionally, the ALJ gave "substantial weight" to Dr. Herrera's conclusion that Plaintiff could perform in a work environment if he were limited to "simple, repetitive, routine tasks in a low stress, low production setting with minimal interpersonal contact." (Tr. 23) In short, the ALJ expressly considered specific evidence in the record of Plaintiff's ability to maintain concentration, persistence, and pace during a work day in arriving at her determination of Plaintiff's RFC.

Moreover, the ALJ acknowledged Plaintiff's limitations and accounted for them by limiting him to simple, routine, repetitive tasks in an environment that does not involve assembly line pace or adherence to strict quotas. (Tr. 20) This RFC finding accounted for the limitations suggested by Dr. Herrera's examination and Plaintiff's own testimony, as well as the general observations made by Dr. Britt. Unlike in *Mascio*, the ALJ did not simply limit Plaintiff to simple, routine or unskilled work. Rather, by restricting Plaintiff to an environment that does not involve assembly line pace, the ALJ accounted for his limitation in pace. By limiting Plaintiff to

14

a low production setting, she accounted for his limitations in concentration and persistence. *See Linares v. Colvin*, No. 5:14-CV-00120, 2015 WL 4389533, at *4 (W.D.N.C. 2015).

As a final matter, Plaintiff notes that the vocational expert testified that there would be no jobs that Plaintiff could perform if he were off task for 10% of the workday. He suggests that remand is warranted because the ALJ "made no finding" on this issue. However, as the ALJ pointed out, there was no medical evidence in the record to suggest that Plaintiff would be off task for 10% of the workday. (Tr. 24) Thus, the Court finds that the ALJ conducted an adequate function-by-function analysis of Plaintiff's nonexertional limitations and that her RFC determination accounted for Plaintiff's limitations in pace, persistence, and concentration.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is **DENIED**. The Commissioner's Motion for Summary Judgment is **GRANTED**, and the Commissioner's decision is **AFFIRMED**. The Clerk of Court is directed to dismiss this appeal.

**SO ORDERED.**

Signed: March 15, 2016

Graham C. Mullen
United States District Judge